```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF GEORGIA
                    COLUMBUS DIVISION
```

| | | |
|---|---|---|
| TITLE MAX, | * | |
|     Appellant, | * | |
| vs. | * | CASE NO. 4:16-CV-172 (CDL) |
| JONATHAN NORTHINGTON, | * | |
|     Appellee. | * | |

| | | |
|---|---|---|
| TITLE MAX, | * | |
|     Appellant, | * | |
| vs. | * | CASE NO. 4:16-CV-174 (CDL) |
| GUSTAVIUS A. WILBER, | * | |
|     Appellee. | * | |

O R D E R

In these bankruptcy appeals, Appellant Title Max appeals the bankruptcy court's orders denying Title Max's motions for relief from stay. For the reasons set forth below, the Court affirms the bankruptcy court.

STANDARD OF REVIEW

"The district court in a bankruptcy appeal functions as an appellate court in reviewing the bankruptcy court's decision." *Williams v. EMC Mortg. Corp.* (*In re Williams*), 216 F.3d 1295, 1296 (11th Cir. 2000) (per curiam). The Court must "review the bankruptcy court's factual findings for clear error and its

legal conclusions de novo." *Fla. Agency for Health Care Admin. v. Bayou Shores SNF, LLC*, (*In re Bayou Shores SNF, LLC*), 828 F.3d 1297, 1304 (11th Cir. 2016).

## FACTUAL BACKGROUND

**I.   Jonathan Northington**

Northington entered a vehicle title pawn transaction with Title Max on August 27, 2015. Northington Mem. Op. 2, ECF No. 4 at 96-106 in 4:16-cv-172 or ECF No. 24 in Bankr. M.D. Ga. 15-40877. The transaction was a "pawn transaction" within the meaning of O.C.G.A. § 44-12-130(3). *Id.* Under the pawn transaction, Northington delivered the certificate of title on his 2006 Toyota Avalon to Title Max in exchange for a cash advance of $5,253. *Id.* The pawn transaction matured on September 26, 2015. *Id.* Under Georgia law, Northington had thirty days from that date—until October 26, 2015—to redeem the vehicle by paying the remaining balance of the principal, interest, and pawnshop charges. *Id.* On October 2, 2015, before the grace period expired, Northington filed a petition for bankruptcy protection under Chapter 13. *Id.* Under 11 U.S.C. § 108(b), Northington had sixty days from the petition date—until December 1, 2015—to redeem the vehicle. *Id.* at 2-3. Northington did not do so. *Id.* at 3. He is still in possession of the vehicle. *Id.*

Northington filed a Chapter 13 plan on October 2, 2015. *Id.* On his Schedule D, Northington listed Title Max as a creditor holding a secured claim in his vehicle. *Id.* at 6. The bankruptcy court confirmed the plan at a confirmation hearing held on December 21, 2015 and entered a confirmation order on January 22, 2016. *Id.* at 3. The confirmed plan proposed to pay Title Max as fully secured with five percent interest and payments of $160 per month on the $5,825 debt. *Id.* Title Max filed a Proof of Claim on February 8, 2015 claiming a secured claim in the amount of $5,846.95 with an annual interest rate of five percent, with the collateral being the vehicle. *Id.*

On January 8, 2016, after the confirmation hearing but before the confirmation order was entered, Title Max filed a motion for relief from the bankruptcy stay, arguing that the vehicle was not part of the bankruptcy estate because Northington did not redeem the vehicle within the grace period. The bankruptcy court held a hearing on Title Max's motion and considered the parties' briefing on the issue. The bankruptcy court entered an order and memorandum opinion denying Title Max's motion for relief from the stay. Title Max now appeals this ruling.

**II. Gustavius Wilber**

Wilber entered a vehicle title pawn transaction with Title Max on September 2, 2015. Wilber Mem. Op. 2, ECF No. 4 at 99-

3

109 in 4:16-cv-174 or ECF No. 23 in Bankr. M.D. Ga. 15-40962. The transaction was a "pawn transaction" within the meaning of O.C.G.A. § 44-12-130(3). *Id.* Under the pawn transaction, Wilber delivered the certificate of title on his 2006 Dodge Charger to Title Max in exchange for a cash advance of $4,400. *Id.* The pawn transaction matured on October 2, 2015. *Id.* Under Georgia law, Wilber had thirty days from that date—until November 2, 2015—to redeem the vehicle by paying the remaining balance of the principal, interest, and pawnshop charges. *Id.* On October 30, 2015, before the grace period expired, Wilber filed a petition for bankruptcy protection under Chapter 13. *Id.* Under 11 U.S.C. § 108(b), Wilber had sixty days from the petition date—until December 29, 2015—to redeem the vehicle. *Id.* at 2-3. Wilber did not do so. *Id.* at 3. He is still in possession of the vehicle. *Id.*

Wilber filed a Chapter 13 plan on October 30, 2015. *Id.* On his Schedule D, Wilber listed Title Max as a creditor holding a secured claim in his vehicle. *Id.* at 6. Title Max filed a proof of claim on December 10, 2015 and amended it on January 4, 2016 claiming to have a secured claim in the amount of $5,477.44 with an annual interest rate of five percent, with the collateral being the vehicle. *Id.* at 3. The bankruptcy court confirmed the plan at a confirmation hearing held on January 21, 2015 and entered a confirmation order on February 9, 2016. *Id.*

4

The confirmed plan proposed to pay Title Max as fully secured with five percent interest with payments of $175 per month on the $5,036 debt. *Id.*

On January 8, 2016, Title Max filed a motion for relief from the bankruptcy stay, arguing that the vehicle was not part of the bankruptcy estate because Wilber did not redeem the vehicle within the grace period. The bankruptcy court temporarily denied the motion but scheduled briefing on the issue. The bankruptcy court held a hearing on Title Max's motion and considered the parties' briefing on the issue. The bankruptcy court entered an order and memorandum opinion denying Title Max's motion for relief from the stay. Title Max now appeals this ruling.

## DISCUSSION

The bankruptcy court concluded that the vehicles were property of the debtors' bankruptcy estates, that Title Max held secured claims to the vehicles that could be modified by each debtor through his Chapter 13 plan, that Title Max did not timely object to confirmation of the plans, and that Title Max is bound by the terms of the confirmed plans. Title Max argues, as it did before the bankruptcy court, that the vehicles were *not* part of the debtors' bankruptcy estates because the grace period for redeeming the vehicles expired before the debtors'

plans were confirmed.[1]  The bankruptcy court rejected this argument and found that because the vehicles were part of the debtors' estates when the debtors filed their Chapter 13 petitions, Title Max held secured claims in the vehicles that could be modified under 11 U.S.C. § 1322(b)(2).  The Court agrees with the bankruptcy court's conclusion.

When Northington and Wilber filed their Chapter 13 petitions and their proposed Chapter 13 plans, each debtor still had title to his vehicle, subject to Title Max's lien and subject to losing the title if he did not redeem it within the redemption period.  *See* O.C.G.A. § 44-14-403(a) ("A pawnbroker shall have a lien on the pledged goods pawned for the money advanced, interest, and pawnshop charge owed but not for other debts due to him.  He may retain possession of the pledged goods until his lien is satisfied and may have a right of action

---

[1] Title Max did not cite any binding precedent that squarely supports its position.  In its reply brief, Title Max did cite *Commercial Federal Mortgage Corp. v. Smith* (*In re Smith*), 85 F.3d 1555 (11th Cir. 1996).  In *Smith*, the debtor defaulted on his home loan payments and the bank foreclosed.  *Id.* at 1557.  *After* the foreclosure sale, the debtor filed for Chapter 13 protection.  *Id.*  Under Alabama law, he had a statutory right of redemption at the time of his petition.  *Id.*  The Eleventh Circuit noted that *after* a foreclosure sale occurs, there is no claim and no default to cure or waive under the bankruptcy code.  So while the debtor did retain his statutory right of redemption after filing a Chapter 13 petition and could cure the default by making a lump sum payment, he could not "modify that right of redemption under a Chapter 13 plan that is filed after a foreclosure sale."  *Id.* at 1560.  A critical factor in *Smith* was that the debtor's claim to title was extinguished by the foreclosure sale that occurred *before* he filed for Chapter 13 protection.  As discussed below, that is not the case here, where the debtors still owned their vehicles when they filed their Chapter 13 petitions.  *Smith* thus does not apply.

6

against anyone interfering therewith."). Under Georgia law, if pledged goods are "not redeemed within the grace period," they "shall be automatically forfeited to the pawnbroker by operation of this Code section, and any ownership interest of the pledgor or seller shall automatically be extinguished as regards the pledged item." O.C.G.A. § 44-14-403(b)(3). Based on this language, the Court concludes that a pledgor's ownership interest in the pledged item is not extinguished until after the grace period expires. Here, each debtor filed his Chapter 13 petition before the grace period expired. Thus, neither debtor's interest in his vehicle was forfeited or extinguished before his petition date, so each debtor's vehicle belonged to the bankruptcy estate because the debtor still had an ownership interest. *See* 11 U.S.C. § 541(a)(1) (stating that the bankruptcy estate "is comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case").

As of each debtor's petition date, Title Max had the right to be repaid pursuant to the title pawn agreements or to obtain full title to the vehicle if the required payments were not made. Thus, Title Max was a "creditor" with a "claim" against each debtor within the meaning of the bankruptcy code because Title Max held a lien on each debtor's vehicle "for the money advanced, interest, and pawnshop charge owed." O.C.G.A. § 44-

7

14-403(a); *see* 11 U.S.C. § 101(5)(A) (defining "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured"); 11 U.S.C. § 101(10)(A) (defining "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor"); 11 U.S.C. § 102(2) (defining "claim against the debtor" as including a "claim against property of the debtor").

In sum, when the debtors filed their Chapter 13 petitions, the vehicles were part of their bankruptcy estates and Title Max held secured claims.  The bankruptcy code provides that a Chapter 13 plan may "modify the rights of holders of secured claims."  11 U.S.C. § 1322(b)(2).  Therefore, the bankruptcy court was authorized to modify Title Max's claims as it did, requiring each debtor to pay nearly the entire amount claimed by Title Max in its Proofs of Claim, and Title Max is bound by the terms of each debtor's confirmed Chapter 13 plan.  Accordingly, the bankruptcy judge's denials of Title Max's motions for relief from stay are affirmed.

IT IS SO ORDERED, this 27th day of October, 2016.

                              S/Clay D. Land
                              ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
                              CLAY D. LAND
                              CHIEF U.S. DISTRICT COURT JUDGE
                              MIDDLE DISTRICT OF GEORGIA